FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 OCT 14 P 3: 44

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| **STEPHANIE D. DAWSON,** ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 1:15CV1341-GBL-TCB |
| ) | |
| **AMERICAN INFOTECH** ) | |
| **SOLUTIONS, INC.,** ) | |
| *A Virginia Stock Corporation,* ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW your plaintiff, STEPHANIE D. DAWSON (hereinafter "Dawson" or "Plaintiff"), by counsel, and moves this Honorable Court for a judgment for legal and equitable relief in her favor against the Defendant, AMERICAN INFOTECH SOLUTIONS, INC., (hereinafter, "American Infotech" or "AIS" or "Defendant"), and in support of said request respectfully alleges and avers as follows.

### Nature of the Action

1. This is a civil action by Plaintiff Stephanie D. Dawson against her former employer, American Infotech Solutions, Inc., for violations of Title I of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12112, as authorized through 42 U.S.C. § 12117, and discrimination and interference with protected rights, under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1140, as authorized through 29 U.S.C. § 1132(a)(1) and (3), for disparate treatment and unlawful discharge. Ms. Dawson had a known disability and record of impairment, due to treatment for cancer (leukemia), and was terminated after she was diagnosed, treated for, and under the ADA, sought reasonable accommodation for, that condition, and because of the necessity

1

for treatment and costs she did incur, and was likely to continue to incur, under the Defendant's health insurance welfare benefit plan. Plaintiff also sues at Virginia state law for breach of contract and accounting equitable relief, as to commissions owed under her agreement of employment with the Defendant.

<u>Parties, Jurisdiction and Venue</u>

2. At all relevant times herein, Plaintiff STEPHANIE D. DAWSON was and is an adult, female American citizen, and a resident and domiciliary of the Commonwealth of Virginia.

3. Plaintiff Dawson was employed full-time by Defendant American Infotech Solutions, Inc., and its related entities, from on or about September 13, 2012, until on or about February 7, 2014.

4. Upon information and belief, at all relevant times herein, Defendant American Infotech Solutions, Inc. ("American Infotech" or "Defendant") was and is a Virginia stock corporation.

5. This Court has subject matter jurisdiction of Ms. Dawson's claims under the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. including § 12117, which cross-references the jurisdictional provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3)), which provisions also apply in their own right, to Plaintiff's claims of disparate treatment and discharge, based upon disability.

6. This Court also has subject matter of Ms. Dawson's ERISA-based claims pursuant to 29 U.S.C. § 1132(e).

7. The Court also has supplemental jurisdiction over Plaintiff's state law breach of commissions contract and accounting claim, pursuant to 28 U.S.C. § 1367, as

the same involves a common core of operative facts as the Plaintiff's federal claims, and the damages relating to the federal claims, as to form part of the same case or controversy under Article III of the U.S. Constitution.

8. American Infotech is subject to the personal jurisdiction of this Court pursuant to Va. Code § 8.01-328.1, and all individual Defendants in this action are subject to the personal jurisdiction of this Court pursuant to Va. Code § 8.01-328.1(A)(1), (2) and (3).

9. American Infotech is present in, and regularly conducts and affairs and business activities in, this judicial district, and otherwise in interstate, as well as international, commerce.

10. The causes of action alleged in this action arose in this judicial district, in Fairfax County, within the Eastern District of Virginia.

11. The unlawful employment practices committed by Defendant occurred in this judicial district, and upon information and belief, employment records relevant to such practices are maintained and administered in this judicial district, and Ms. Dawson would still be employed in this judicial district with American Infotech, but for the unlawful actions of the Defendant.

12. Venue over Ms. Dawson's claims is proper in this Court.

## Factual Background

13. Ms. Dawson began her employment with American Infotech on or about September 13, 2012, initially as a Technical Writer, for forty hours per week (full time), at a salaried rate of $36,000 per annum, or $17.30 per hour, plus benefits, to include health insurance.

14. In or around December of 2012, Plaintiff received a positive performance evaluation, and was promoted to the position of Business Development Coordinator, at the increased rate of $39,700.00 per annum, together with benefits, to include health insurance, plus, a production incentive commission compensation amount equal to 1% of the gross collected amounts, to be paid as and when collected, as to all contract opportunities resulting in a written contract with Defendant, and collected sums of money, procured and/or brought to through Plaintiff and the development technical writers' business development efforts, with the said 1% amount to be divided equally, as between Plaintiff, and the two other persons involved in development efforts at the time.

15. Upon information and belief, at all times relevant to this Complaint, and at all relevant times during Plaintiff's period of employment with Defendant, Defendant also maintained an ERISA-qualified health insurance plan the material provisions of which, upon information and belief, embraced inclusion of all full time employees, and/or employees performing 30 or more hours of work per week for Defendant, with Anthem Blue Cross/Blue Shield, and/or a similar non-self-insured premium-for-service and indemnity, contract insurance plan for the benefit of eligible employees and their dependents.

16. It was not until almost a year into Plaintiff's employment with Defendant (on a full-time 40 hours per week or more basis), or in August of 2013, when Defendant, through Kumar, informed Plaintiff that she would *then* be enrolled and signed up in Defendant's health insurance plan, at which point Kumar stated: "consider that your raise," or words to that effect; despite this fact, as referenced above, the said benefit of employment had been promised to Plaintiff, from the beginning of her employment, but

not initially delivered, until close to a year after she had been employed there.

17. Plaintiff and the other two employees involved in production were instrumental in procuring award to Defendant of contracts with the Food and Drug Administration (FDA) and Department of Homeland Security (DHS), IC3; despite this fact, Defendant has never accounted to Plaintiff (or, upon information and belief, either of the two other employees) as to the commission compensation she was to have been paid, as described above. Upon information and belief, Defendant billed and collected substantial amounts of money from the two said contracts, and has not accounted to, much less paid to the Plaintiff, her one-third share of the 1% commission described above, and said amounts [however much they may be] are overdue and owing to your Plaintiff.

18. At all times relevant hereto, Ms. Dawson performed her job and functions in at least a satisfactory manner, and often exceeded her job requirements.

19. On or about December 5, 2013, Plaintiff was diagnosed with breast cancer, and began to undergo treatment for that condition; shortly after this, Plaintiff told Atul Kumar, Ashwani Sharma and Veronica Sharma of her diagnosis, and Plaintiff subsequently requested permission to work from home during periods of treatment, and Defendant, through Atul Kumar initially allowed her to continue to work from home.

20. Plaintiff further informed Kumar that she had been told that she could undergo surgery or chemotherapy first, and Kumar expressed a preference that Plaintiff undergo chemotherapy first, he said, so as to minimize the disruption on Defendant's operations, and Kumar further suggested that she work from home.

21. After starting to work from home, and commencing chemotherapy, Atul

Kumar made it extremely unpleasant for the Plaintiff to work from home, constantly calling her and bellowing at her about any issue or item as he could possibly come up with, in a manner, and on a scale, previously never seen by Plaintiff from Mr. Kumar.

22. Despite this fact, Defendant, through its management agents Kumar and others, was aware of Plaintiff's medical condition, and of the fact that she was starting chemotherapy on or about January 10, 2014.

23. As referenced above, almost immediately upon the commencement of Plaintiff's chemotherapy, and during the period of January 13, 2014 to January 27, 2014, and in endurance of Kumar's telephone harangues, Dawson worked from home, an arrangement Kumar initially stated he would re-evaluate in mid-March; but during which he engaged in the above-described campaign of making unprecedented criticism of almost every single thing Plaintiff did, in circumstances where such criticism and scrutiny was not nearly to the same degree, if not non-existent, before she announced her illness and/or sought or received accommodation for the condition. This behavior involved frequent tirades directed at Plaintiff, as well as threats of termination.

24. On or about January 27, 2014, Atul Kumar informed Plaintiff that he was cutting her work hours from 40 hours per week at $18.85 per hour, to twenty hours per week, at $20.00 per hour, "with no benefits." Kumar provided no explanation for this reduction in hours. Upon information and belief, this reduction in hours was intended by Kumar to cause a forfeiture in Plaintiff's status as being sufficiently employed by Defendant, to qualify under Defendant's health insurance plan, as a current employee/enrollee, for purposes of continued health insurance coverage, and was designed to make it more likely that Plaintiff would suffer a forfeiture of coverage, due to

having to pay higher COBRA continuation coverage rates, with less pay.

25. By the time Plaintiff informed Defendant's management of her illness, Defendant's management personnel, including Kumar, were aware that Plaintiff had been living paycheck-to-paycheck, and barely able to cover her bills as they came due, even before she found out she had cancer, during her employment with Defendant.

26. In this regard, on or about January of 2013, after Plaintiff had earned the promotion, Atul Kumar insisted that Plaintiff expend in excess of $1,600.00 in order to reinstate her driver's license [up until that point, Plaintiff did not drive], as Kumar stated that he wanted Plaintiff to be able to drive to various business development meetings. In response to this, Plaintiff stated that she did not have the cash on hand to accomplish this, at which point Kumar offered to pay the money, and stated that the amount should be considered by Plaintiff as a bonus or additional compensation; Kumar later falsely claimed that this $1600.00 payment had been a loan to the Plaintiff.

27. Between Dawson's absences from the office regarding treatment associated with the condition, and working from home, and her appearance at the office after receiving treatments, Defendant, through Atul Kumar and Ashwani Sharma, developed an incorrect view of Dawson as a malingerer or person trying to avoid regularly scheduled work and/or duties, and as a liar, and began a campaign retaliation against Dawson for seeking and receiving accommodation, of her condition, and scrutinizing her every act.

28. Defendant ascribed mendacity to the reality of Dawson having worked from home, as a result of her seeking reasonable accommodation of her disability, as well as on the basis of her usage of benefits under Defendant's ERISA-qualified health

insurance plan.

29. Defendant singled Dawson out for discharge, claiming her position was no longer needed; however, upon information and belief, Defendant retained at least one other male, healthy person, doing business development work, and subsequently hired another employee (also a male) to perform business development work, almost immediately after Plaintiff's termination, in much the same fashion Plaintiff had done, after she was gone. Defendant otherwise had an ongoing need for business development efforts.

30. Defendant used Dawson's future need for, and past availment of, health insurance benefits, as negative factors in consideration of her job performance and capabilities, and in the reduction of hours of Dawson, as well as Dawson's eventual eventual dismissal from employment with Defendant American Infotech.

31. The reduction of Plaintiff's hours, as well as her dismissal, were part of an effort on Defendant's part to cause a forfeiture of rights, and/or loss of coverage, under Defendant's ERISA-qualified health insurance welfare benefit plan.

32. This effort continued even after Plaintiff was fired, and involved, initially, shorting her on the hourly rate agreed upon for hours that she *had* worked, and later, by Defendant purporting to collect COBRA continuing health care insurance coverage premium by "offset," from a paycheck Defendant stated had been issued in error to Plaintiff, even though she was no longer employed, and had been told she was terminated, and had no further wages or compensation coming to her. If Plaintiff had retained the said funds, and otherwise acquiesced in COBRA premium being "deducted from" wages she had not earned through active employment, she otherwise would have

participated or acquiesced in defrauding Defendant's health insurer, as to her still being actively employed by Defendant, which she was not at the time; Plaintiff returned the check and timely paid the COBRA premium due, outright.

33. During the course of communicating with Plaintiff about continuing health care coverage, Kumar changed course, and took the position that the $1600.00 previously paid as a bonus to Plaintiff was not a bonus, but that said amount was a "loan" to Plaintiff, which he requested to be repaid. Upon information and belief, said reversal on Kumar's part, and request for repayment of the bonus, was also motivated by a desire to cause a forfeiture, or otherwise impair, Plaintiff's ability to timely pay, continuing COBRA health insurance premiums, under Defendant's plan.

34. After Plaintiff's discharge, upon information and belief, Defendant hired another business development person, Vik, for thirty hours per week, at $25.00 per hour, to perform work of the same and/or similar duties as were previously performed by Plaintiff.

35. On or about March 17, 2014, Dawson filed a charge of discrimination against defendant with the U.S. Equal Employment Opportunity Commission, arising out of the above facts, and separation, and referencing discrimination based upon disability, and said charge was dual filed with the Fairfax Office of Human Rights and Equity Programs.

36. On or about July 18, 2015, Dawson received from the U.S. Equal Employment Opportunity Commission a letter dismissing her foregoing charge of discrimination in Charge No. 570-2014-00788, and otherwise was accorded the "right to sue" in respect of the facts referenced above, and Dawson has otherwise properly

exhausted all administrative remedies and prerequisites to bringing the following claims in this Honorable Court. A true and correct copy of said "Right-to-Sue" Notice is attached hereto, and incorporated herein, at **Exhibit #1**.

37. As a direct and proximate result of the Defendant's unlawful actions enumerated above and below, Dawson has suffered loss of employment, loss of health and other benefits, loss of wages, loss of commissions, and has sustained emotional pain and mental anguish, sleeplessness, embarrassment, and guilt associated with said separation, resulting in financial hardship, and damage to her credit rating and financial standing, and continues to suffer these in amounts continuing to accrue, in an amount to be more particularly stated at trial.

38. As referenced and alleged hereinabove and below, all acts of malfeasance, misfeasance and nonfeasance of the Defendant, acting by and through its' various agents, as to Dawson, up through and including the termination of her employment with Defendant, were taken with actual knowledge on Defendant's part, as to its' obligations at law, and/or under circumstances where Defendant's individual agents acted with reckless disregard as to what the Defendant's obligations to Dawson were (and are) at law, under both the ADA and ERISA; said actions were taken with willful and wanton indifference to, and/or as part of an affirmative effort to thwart and emasculate, the statutorily protected rights of Dawson.

## COUNT ONE

(Retaliatory and Discriminatory Demotion and Discharge on the Basis of Disability and Necessity to Provide Reasonable Accommodation, under the Americans With Disabilities Act)

39. Paragraphs 1 through 38 above are hereby incorporated and restated

herein.

40. Dawson suffered from a disability, as that term is defined in 42 U.S.C. § 12102, as she had a physical impairment substantially limiting one or more major life activities, both temporarily and permanently, as said cancer condition, and the treatment for that condition, significantly restricted the conditions, manner and duration, under which she could perform duties, as well as major life activities, involving being standing up, breathing, being awake and alert, engaging in any conjugal relations, thinking, and reasoning, in particular, when compared to an average person in the general population.

41. Dawson suffered also from a disability, as that term is defined in 42 U.S.C. § 12102, as she also had a record of impairment with Defendant with respect to prior treatment, and events, surrounding the cancer condition; Dawson also was regarded by Defendant's management agents as having impairment to her ability to work and continue to function in general, after her diagnosis, as well as chemotherapy treatment.

42. Upon information and belief, at all relevant times herein, and consistent with 42 U.S.C. § 12111(5)(A), Defendant was engaged in an industry affecting commerce, with fifteen or more employees for each working day in each of twenty or more calendar workweeks in the current or preceding calendar year.

43. Dawson was a qualified individual with a disability, as that term is defined at 29 U.S.C. § 12111(8), in as much as she could have performed the essential functions of her former position with Defendant, at the time Defendant terminated her employment, with or without reasonable accommodation. Despite Kumar's apparent view that Plaintiff's non-infection mask made her unfit for work or employment, she could have continued, with accommodation, to have fulfilled the essential functions of her former

position with Defendant.

44. Defendant knew of Dawson's impairment, as well as Dawson's record of impairment.

45. If it were not for Dawson's disability, and requests for reasonable accommodation resulting from that disability (to work from home on a flexible schedule, and to wear a mask at work, shortly after chemotherapy), and need for medical care, and expenditures for health care insurance, Defendant would not have taken the adverse action of terminating Dawson.

46. Dawson's disability, and seeking of reasonable accommodations as a result of that disability, were motivating factors in Defendant's reduction of Plaintiff's hours, and later, Defendant's termination of Plaintiff's employment.

47. Upon information and belief, Plaintiff was replaced in her functions as a Business Development Coordinator, by one to two male persons who did not suffer from any serious medical condition, or disability, or substantial need for, or use of, medical insurance.

## COUNT TWO

(Discrimination for Exercise of Rights, and Interference with Rights
under ERISA, in violation of 29 U.S.C. § 1140 and pursuant to 29 U.S.C. § 1132(a)(3))

48. Paragraphs 1 through 47 above are hereby incorporated and restated herein.

49. As an American Infotech employee, Dawson participated in, and was a beneficiary of, its group health insurance plan, an employee welfare plan, as that term is defined in ERISA, at 29 U.S.C. § 1002(3), and should have been as such prior to the date upon which she was enrolled therein by the Defendant.

50. During the period of time immediately leading up to the reduction in her hours, and her eventual termination from Defendant, Ms. Dawson worked from home, and was later refused permission to wear a mask at work, in the back office, when Atul Kumar had insisted that she physically appear at the office.

51. Due to the cancer and the need for surgery and/or chemotherapy, and Dawson's past and pending and future medical expenses, it was foreseeable to Defendant's management personnel that the plan and group or insurance risk pool for Defendant would incur, and did incur, large experience rating boosts, and/or additional premium costs, in the indefinite future, due to Dawson's ongoing need for procedures, medications and treatments relating to the cancer condition.

52. The reduction of Plaintiff's hours, and termination of Plaintiff, and "revocation" of the "bonus" paid to her, were actions taken by Defendant with the purpose of interfering with her continued attainment of benefits under Defendant's health insurance plan, and to impair her ability to pay continued premiums for that coverage.

53. Plaintiff was otherwise eligible for benefits under Defendant's health insurance plan, due to: (a) her status as an employee; and later, (b) her timely payment of the COBRA premiums.

54. The actions of the Defendant described above were and are in violation of Section 510 of ERISA, 29 U.S.C. § 1140, relating to interference with protected rights, which reads, in pertinent part, as follows.

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter..., or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter or the Welfare and Pension Plans Disclosure Act.

...
The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140 (West 2008 Repl. Vol.).

## COUNT THREE

(Breach of Commissions Contract and Accounting Therefor)

55. Paragraphs 1 through 38 above are hereby incorporated and restated herein.

56. As referenced above, at the time of her promotion, Defendant, through Kumar, agreed to compensate the Plaintiff (and other business development team members) 1% of each contract opportunity brought to American Infotech, through Plaintiff's efforts, based upon gross amounts collected from the respective customer.

57. In so agreeing to that compensation arrangement, and as a co-venturer with Defendant in the procurement of said contracts, Plaintiff reposed confidence and trust in Kumar, and Defendant, to truthfully and faithfully bill the customers pursuant to those contracts, as well as account to her as to what the basis of her compensation would be, and pay her commissions, based upon one-third of 1% of any amounts actually collected on those contracts.

58. In so agreeing to compensate Plaintiff and others by said contract commission arrangement, Defendant also thereby also assumed a duty of care, loyalty, honesty, and disclosure, to Plaintiff, and to act fairly in respect of, and account to Plaintiff for the basis of, and pay, the said Commissions.

59. In reliance on Defendant's representations, and the parties' agreement, pertaining to commissions and incentive compensation, Plaintiff: (a) did not seek, and/or

delayed seeking, possibly more remunerative employment opportunities elsewhere; and (b) provided material assistance and services to Defendant in securing the above-described contracts, to the point that Defendant obtained signed, bilateral agreements, and started services, billing, as well as collected substantial sums of money, pursuant to above-referenced FDA and DHS agreements.

60. Despite Plaintiff's faithful performance of her end of the bargain on commissions, as referenced above, Defendant has failed to pay to Plaintiff any commission amount whatsoever, on a periodic or ongoing basis, or at any time, based upon the FDA or DHS contract, and never accounted to, or provided Plaintiff with any information or disclosure, relating to amounts billed and collected by Defendant, under the said customer agreements.

61. To the extent Defendant successfully billed and collected substantial sums of money on the FDA and DHS, the said 1% commission amounts are overdue and owing to Plaintiff, and have not been paid, and said failure to account for, or pay, said amounts, is continuing in nature.

## Prayer for Relief

WHEREFORE, your plaintiff prays that this Court enter an Order as follows:

(a) issuing an appropriate prohibitory injunction restraining the defendant from continuing to employ procedures and methods of administration and personnel management, as are unlawful as alleged herein, as to the plaintiff and any others similarly situated, deprive, or have the effect of depriving, persons of their protected rights under the ADA and ERISA; and

(b) rendering a money judgment awarding Stephanie Dawson recovery from

defendant a sum of money equal to the monetary value of all wages, compensation and benefits of employment lost, (estimated to trial), on account of her unlawful separation from the employ of defendant (and as to lost wages, less any interim earnings or amounts which could be earned, in suitable employment, with reasonable diligence, in mitigation of said damages), said overall amount to be subject to proof at trial, in an estimated lost hourly wage amount of thirty thousand dollars ($30,000.00); and

(c) rendering a money judgment representing any and all actual monetary losses, including, but not limited to wages, sustained by the plaintiff, and recoverable economic losses incurred, directly or indirectly, as a result of defendant's above-referenced violations of the ADA and/or ERISA, including, but not limited to, enhanced premium amounts due to COBRA rates for medical coverage;

(d) entering an order requiring the Defendant to account to Plaintiff for all amounts billed and collected under the said FDA and DHS contracts, and further awarding to Plaintiff a money judgment for all unpaid commission amounts due and owing to Plaintiff under the said agreement; and

(e) awarding a money judgment to plaintiff against defendants, in the non-economic compensatory damage sum of three hundred fifty thousand dollars ($350,000.00); and

(f) an award of pre-judgment and post-judgment interest, as allowable and appropriate, at law, on all amounts otherwise awardable, or awarded, herein; and

(g) awarding plaintiff's reasonable attorney fees, expert witness fees and costs, and other litigation-related costs incurred in prosecution hereof; and

(h) awarding such other and further relief as is appropriate to the premises of law,

equity and the facts of this case.

Jury Demand

Your plaintiff hereby demands trial by jury as to all claims for which jury trial is otherwise available at law.

                                      Respectfully submitted,

                                      STEPHANIE D. DAWSON
                                      By Counsel

_____
Christopher R. Rau
Virginia State Bar No. 34135
Attorney for Plaintiff Stephanie D. Dawson
Law Offices of Christopher R. Rau
6711 Lee Highway, Suite 220
Arlington, Virginia   22205-1940
(703) 536-1660 – Telephone
CRRAU@AOL.COM – E-Mail
*Counsel for Plaintiff Stephanie D. Dawson*

Dated:  October 14, 2015

EEOC Form 161-B (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**     Exhibit #1

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Stephanie D. Dawson<br>c/o Christopher Rau, Esq.<br>6711 Lee Highway, Suite 220<br>Arlington, VA 22205-1940 | From: | Washington Field Office<br>131 M Street, N.E.<br>Suite 4NW02F<br>Washington, DC 20507 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2014-00788 | David Gonzalez,<br>State & Local Coordinator | (202) 419-0714 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]*

Mindy E. Weinstein,
Acting Director

July 15, 2015
*(Date Mailed)*

Enclosures(s)

cc:

Human Resources Director
**AMERICAN INFOTECH SOLUTIONS INC.**
12359 Sunrise Valley Drive, Suite 170
Reston, VA 20191